IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KELLY EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-0682-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Kelly Evan's application for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had a variety of severe impairments, but she retained the residual functional capacity ("RFC") to perform past relevant work as a computer tech and clerk typist. The RFC finding was based in large part on the ALJ's uncontested finding that Plaintiff exaggerated her symptoms in order to obtain benefits.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits and disabled widow benefits on January 25, 2012, alleging a disability onset date of August 1, 2010. The

Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on March 17, 2014, issued a decision finding Plaintiff was not disabled.

Plaintiff then submitted eight additional pieces of evidence and requested review from the Appeals Council. On June 19, 2014, the Appeals Council denied Plaintiff's request for review. The Appeals Council's decision contained an exhibit list which listed only five of the eight additional pieces of evidence. R. at 4-5. The items not listed were: a third-party statement submitted by a former co-worker, Megan Goodloe, dated June 5, 2014; Dr. Steve Wilkinson's progress notes dated April 9, 2011, to May 7, 2014; and a third-party statement submitted by Debora Signoracci, R.N. All eight pieces of evidence were, however, included in the certified administrative record. R. at 7-9, 10-49, 84.

The Appeals Council's denial of Plaintiff's request for review leaves the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff argues the Appeals Council erred by failing to evaluate the entire record after she submitted eight additional pieces of "new and material evidence" for consideration. Plaintiff contends that since three pieces of the new evidence were not listed as exhibits in the Appeals Council's decision, the Appeals Council did not evaluate the entire record, and so remand is required. Alternately, Evans argues that it is unclear whether the Appeals Council considered these three pieces of evidence, in which case remand is also required. Plaintiff does not dispute the ALJ's credibility determination or the mountain of evidence supporting it.

The regulations provide that the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). New evidence is material if it is "'non-cumulative, relevant, and probative of the claimant's condition for the the time period for which benefits were denied,'" *and* it is "reasonably likely" that consideration of the new evidence would have

3

resulted in an award of benefits. *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (quoting *Woolf v. Shalala*, 7 F.3d 1210, 1215 (8th Cir. 1993)).

If the Appeals Council failed to consider new and material evidence, remand is not automatically required. Failure to consider new evidence may be a basis for remand, but only where the new evidence might be outcome determinative. *Id., see Lamp*, 531 F.3d at 33 (remanding where it was unclear whether the Appeals Council considered a doctor's explanatory letter which might have justified an award of benefits).

The three pieces of evidence not included in the Appeals Council's exhibit list do not contain outcome determinative information. Megan Goodloe's letter asserts that Plaintiff was a hard worker who used braces to support herself while routinely working ten to twelve-hour days from July 2001 to July 2004. R. at 7. The letter generally lauds Plaintiff's work ethic, claiming Plaintiff pushed "herself through tremendous levels of pain" as she worked, "maintaining a positive spirit and a narrative of competency and self-sufficiency." R. at 9. The notes from Dr. Wilkinson's files are largely unremarkable, simply documenting that Plaintiff has a long history of back pain, and that he performed a minor surgery on her for spinal stenosis. R. at 10-49. Included in his notes is a conclusory letter dated Marcy 31, 2014, addressed "To Whom it May Concern" stating "I feel that she is completely disabled as a result of this [back] problem," and "I think her walking is going to be significantly limited and that she most likely will need to use a walker or crutches for any type of distance." R. at 29. Finally, the third-party statement submitted by Debora Signoracci, R.N., a coordinator at the Northland Career Center, School of Practicing Medicine, generally states that the school gave Plaintiff special accommodations in her classes, and that Plaintiff completed all her courses within the standards set by the state of Missouri. R. at 84. Of note, it also specifically states that Ms. Signoracci was informed that Plaintiff had injured her back in her previous job while transferring a patient; that by October

2010, Plaintiff was unable to walk more than fifty feet; as a result, she had secured a handicap-parking permit so she would not have to walk more than fifty feet from her car to a classroom; that she began using crutches to navigate to and from her classes; and that on a few occasions she had availed herself of the opportunity to lie on the floor in the back of the classroom to relieve her back pain. *Id.*

Assuming for the sake of argument that the Appeals Council did not consider these three pieces of evidence, and this evidence is new and relevant, the Court would not order remand. Given the overwhelming, uncontested evidence that Plaintiff exaggerated her symptoms in order to obtain benefits, consideration of these additional pieces of evidence would not be reasonably likely to result in an award of benefits.

Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

Here, the ALJ spent twelve pages of his decision discussing specific instances where Plaintiff's actions undermined her credibility, including, but not limited to, the following. In March and June of 2012, Plaintiff reported that she could not walk more than twenty to fifty feet and that she required the use of crutches. R. at 66, 761, 849. She requested a prescription for crutches from her treating doctor, Dr. Thomas Wilkins, M.D., telling him that Social Security Disablity "needs something stating she needs crutches." R. at 67, 767. She told him she could not sit for more than forty-five minutes or walk more than fifty feet, and that she had to lie down twelve hours per day. R. at 67, 864. The Commissioner's investigatory branch subsequently interviewed Plaintiff and then made a surveillance video recording Plaintiff getting out of her car, walking without use of her crutches, bending over her trunk to remove a baby stroller, lifting

a toddler from a child seat in her car, and walking without using an assistive device. R. at 70, 965-70. The investigators also noted that she walked and sat normally, without displaying any pain behaviors. *Id.* The fact that these investigators recorded Plaintiff walking without support and engaging in activities exceeding her subjective claims is certainly relevant evidence supporting the ALJ's decision. *See, e.g., Phelps v. Astrue*, No. 4:11CV1362MLM, 2012 WL 2885378, at *7 (E.D. Mo. July 13, 2012) (holding investigatory report supported the ALJ's credibility determination where investigators observed the claimant walking without her walker).

The ALJ also noted that one of Plaintiff's own doctors, Dr. David Ebelke, M.D., told her that she was not disabled and declined to support her bid for disability. On April 25, 2012, he told her that she should not be using narcotic pain medication, and that he did not want to be involved in her effort to get disability benefits. R. at 66, 674. A few months later, on January 23, 2012, Dr. Elbelke reported that she had returned, but that she wasn't "interested in treatment; she's applying for disability." R. at 66, 675. Dr. Elbelke reported that Plaintiff looked comfortable and that there was no clinical evidence of the lower-body weakness of which she was complaining. *Id.* He added that he was not sure why she had come to see him, since she admitted that she did not feel bad enough to consider surgery. *Id.* She told him that she wanted to make sure her "paperwork was in order" for her disability case. *Id.* Dr. Ebelke wrote in his notes, "I can't state that she can't work as a result of her low back condition. She does have some conditions in her back that might limit her, but in my opinion this shouldn't prevent her from working. Many people have far worse stenosis than this and are able to work." *Id.*

A few months later, another doctor made similar observations which reflect negatively on Plaintiff's credibility concerning the intensity, persistence, and limiting effects of her symptoms. On August 16, 2012, Neurologist Michael Schwartzman, D.O., reported that Plaintiff had a

6

"conscious" limp, and "give way" weakness on strength testing, suggesting she was exaggerating her limitations.  R. at 68, 934.

It is well-established that the ALJ may discount a claimant's credibility for exaggerating her symptoms.  *See, e.g., Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).  In the present case, the evidence that Plaintiff was exaggerating her symptoms is so overwhelming that the three pieces of newly submitted evidence would not have altered the ALJ's decision.

Accordingly, the Court holds the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Buckner,* 646 F.3d at 556.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     September 11, 2015             /s/ Greg Kays
                                         GREG KAYS, CHIEF JUDGE
                                         UNITED STATES DISTRICT COURT